Speer, J.
With regard to the first defense, for several reasons the court is of the opinion that it is not maintainable. The mutual transactions covered a period of about twelve years; stated accounts were rendered Jewell, monthly, and he acknowledged their correctness without objection. He is concluded as to these monthly accounts, and is barred by the statute of limitations from the plea of usury, and besides, it is not at all clear that there was usury. It is true, interest was charged by Woodward, Baldwin & Co. on the balances which Jewell admitted to be correct; but these balances properly bore interest, and it is nowhere made to appear that more than seven per cent! was charged. This can not be held usurious (Pinckard vs. Ponder, 6 Ga. 253), nor could their commissions be regarded as usurious.
This brings us to the consideration of the second ground of defense, namely, “that Jewell had the right to sell, and the respondents took an unincumbered title.” It cannot be doubted that the two instruments executed by Jewell and Woodward, Baldwin & Co. on January 17, 1878, in legal contemplation, constitute one and the same contract. Slaughter vs. Culpepper, 44 Ga. 325; 2 Bl. Com. 327; Co Litt. 236. Where two instruments are executed at the same time, between the same parties, relative to the same subject matter, they are to be taken in connection *551 as forming together the several parts of one agreement. Whether these two instruments constitute a deed or mortgage is not material. If a mortgage, Jewell hada right to sell the land free from its lien; if a deed, he had the right to sell the title, having reserved that right In his contract with Woodward, Baldwin & Co. Nor does it matter that the instrument authorizing Jewell to sell had but one attesting witness. Inter partes it is binding; and besides, it is in the nature of a reservation grafted in the deed, which was properly attested. A court of equity will not permit Woodward, Baldwin & Co. to defeat purchasers under the instrument which they themselves have executed. It is a familiar doctrine “that he who empowers another to do a wrong must suffer rather than innocent persons who have been as a consequence wronged.” Besides, this is simply an objection to the execution of the instrument, and the complainant produced it as a part of their exhibits to their bill, and gave it verity in that way. Hunt vs. Formby, 43 Ga. 79. It is urged for the complainants that Myrick and Mrs. Daniel hold under quitclaim deeds from Jewell, and for that reason cannot rely on the equities of bona fide purchasers without notice. This question has been adjudicated by the courts of the several States so as to leave a distressing conflict of authority; but ithe supreme court of the United States has settled the rule for our guidacce here. They hold that a grantee in the quitclaim deed cannot defend as a bona fide purchaser without notice. Villa vs. Roderiguez, 12 Wall. 323; Dickerson vs. Colgrove, 100 U. S. 578. It may well be doubted, however, whether these are quitclaim deeds. They convey the title absolutely, without the usual phraseology, “remise,” “release,” ‘relinquish,” “quitclaim,” etc. Besides, no form in Georgia is necessary to a conveyance, provided the intent to convey is-clear. Ball vs. Wallace, 32 Ga. 172. Conceding, however that the deeds are of the character claimed by the complainants, the notice with which the purchaser was charged is defect of title. But there was no such defect here, as Jewell had the right to sell and to make titles. This right was exercised. But it is insisted that the quitclaim deeds should have the effect to put on the purchasers the duty to see that the purchase money found its way into the bands of those to whom it belonged. 2 Perry on Trusts, 796, and 2 Story on Eq. Jur. 1122-1132, inclusive, are cited. The English rulé on this intricate topic is as follows : “Where the trust is to pay from the proceeds of cale a particular debt, the purchaser must see that the money finds its way into the hands of those to whom it belongs.” 2 Perry on Trusts, 796. But this rule is not favored in American courts, and the same author, paragraph 798, concedes this; and Mr. Justice Story declares, after a full statement of the nice distinctions involved: “They lead strongly to the *552 conclusion to which not only eminent jurists, but eminent judges, have arrived, that it would have been far better to have held in all cases that the party having the right to sell had also the right to receive the purchase money, without any further responsibility on the part of the purchasers as to its application.” Story on Eq.Jur. 1135. See, also, Elliott vs. Merryman, Lead. Cas. in Eq, (Am. Notes) p. 73. Prom these authorities the conclusion is obvious that, in the absence of any allegation or evidence of collusion or fraud between the respondent Jewell and his co-respondents, the purchasers of the lands, the latter were under no legal obligation to took to the proper application of the purchase money. Bill dismissed.— The Reporter.